# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DOUGLAS EDWARD WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-10-490-FHS-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Douglas Edward Williams requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 2, 1970, and was thirty-eight years old at the time of the administrative hearing. (Tr. 33, 130). He graduated high school and attended two years of junior college (Tr. 33, 164), and has worked as a material handler, cook, and cashier (Tr. 22, 50). The claimant alleges that he has been unable to work since January 15, 2005, due to a bulging disc, bipolar disorder, myocardial bridging, social anxiety, hepatitis C, and osteoporosis. (Tr. 157).

## Procedural History

On June 19, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 130-135). His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 8, 2009. (Tr. 10-25). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift

20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, but was also limited to performing simple work tasks with routine supervision. Additionally, the ALJ found that the claimant could relate superficially to co-workers and supervisors for work purposes, but could not effectively relate to the general public. (Tr. 17). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, inspector/packer or product assembler. (Tr. 22-23).

## Review

The claimant contends that the ALJ erred by failing to properly weigh evidence from treating physicians, specifically evidence from Dr. Shyla Butt that related to his hip, back, and shoulder pain. The undersigned Magistrate Judge finds that the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis, but for reasons other than those specifically urged by the claimant.

The relevant medical evidence reveals that the claimant was treated for his bipolar disorder at Mental Health Services of Southern Oklahoma ("MHSO") from 2001 to 2007. (Tr. 464). Notes from those records indicate that the claimant "had trouble accepting his diagnosis," and was not always compliant with his medication. On January 11, 2005, Clinician Tanya Magness, and LPC candidate, assigned the claimant a Global Assessment of Functioning ("GAF") score of 51, and stated that his highest GAF in the past year was a 50. (Tr. 314-315). On May 25, 2007, Clinician Richard D. Beishline, an LPC candidate, assessed the claimant with a GAF of 52, and noted that the claimant's

highest GAF in the past year was a 55. (Tr. 324). Mr. Beishline completed a multi-page form assessing the claimant's mental health status and service plan. He checked a box indicating that the mental health service plan was of low complexity, and his notes repeatedly indicated that the claimant was an active participant in the process, but that the claimant had a "fair to moderate" prognosis, "due to his life circumstances." (Tr. 326-327, 335). The claimant participated in individual and group therapy, and the record contains notes from those sessions from March 2006 through February 2007. These sessions focused on treatment compliance and identifying triggers to the claimant's mood fluctuations. (Tr. 371-387). The notes also indicated that the claimant missed or rescheduled several sessions. (Tr. 389-396). The claimant was discharged from MHSO in August 2007, because they had had no contact with the claimant for 90 days. (Tr. 464). On the discharge form, the clinician indicated that none of the claimants goals had been achieved: taking medications as prescribed, demonstrating improved self-control, or identifying early warning signals to mood fluctuations. (Tr. 464). Additionally, Dr. Jerry Wyatt completed a "Mental Impairment Questionnaire," assessing the claimant with a GAF of 52 and checking a box indicating that the claimant would have difficulty working a regular job. (Tr. 488-490). This May 2009 assessment also included a mental RFC evaluation, in which Dr. Wyatt indicated that the claimant has moderate restrictions on his activities of daily living; marked difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence, or pace; and repeated episodes of decompensation. (Tr. 490).

On November 11, 2006, Patrick Turnock, Ph.D., performed a mental status examination of the claimant. (Tr. 273-277). After his evaluation, Dr. Turnock made the following recommendations:

> [Claimant] is a bright and energetic male who is currently receiving mental health treatment but his thinking is still "off" somewhat. He may need more medication adjustments in order to further stabilize his mental state. He presents as reasonably functional today. Stress may exacerbate his symptoms of mental illness. There is some concern regarding the safety of those around him given his stated anger and reported history of homicidal thinking. During this evaluation, he did at various points indicate his anger with various doctors, his attorney, and a variety of other people, indicating this undercurrent of anger is still active. Certainly Mr. Williams would require a stable source of psychiatric medications. Given his report of his hepatitis, fully adequate medication for his disorder may prove unusually challenging. It is notable that no mental health records were included with the file received by this evaluator. . . . Finally it should be noted that although Mr. Williams does report a history of homicidal and angry thinking, he does not report a history of acting on these thoughts.

(Tr. at 275-276).

As to the claimant's physical impairments, the relevant medical evidence reveals that Dr. Shyla Butt completed a physical RFC assessment in May 2009. (Tr. 491-495). Her assessment stated that the claimant was incapable of even low stress jobs, that he could sit/stand/walk for less than 30 minutes at a time, and that she estimated the claimant would likely be absent from work more than four days a week due to his impairments or the need for treatment. (Tr. 492-494).

At the administrative hearing, the claimant testified that he had been hospitalized for a suicide attempt within the past year, which was due to his manic bipolar disorder with psychosis. (Tr. 39). He also stated that he could not lift anything over 10 pounds because he had torn his rotator cuff, and that he had difficulty twisting, stooping, and

crouching. (Tr. 41). He testified that he thought he could sit for two hours, but that he would have to take breaks to get up and move around, that he could stand for less than two hours, and that he often had to elevate his feet. (Tr. 42-43). He presented at the hearing with a cane, and explained that Dr. Butt had told him that he "would be better off if [he] used a cane." (Tr. 43). Additionally, Dr. Wyatt testified at the hearing that the claimant's diagnosis is "bipolar disorder with most recent episode mixed being manic and depressive with psychotic features." (Tr. 45). He further testified that the claimant had pervasive loss of interest or anhedonia, appetite disturbance, sleep disturbance, psychomotor agitation at times, decreased energy, feelings of guilt or worthlessness, and thoughts of suicide. (Tr. 45-46). He stated that the claimant's medications caused lethargy and lack of energy, that the claimant had "no social support whatsoever," and that the claimant's physical limitations further exacerbated his mental issues. (Tr. 47). When questioned about the claimant's past drug use, Dr. Wyatt stated that, "In general . . . with bipolar disorder, most people suffer from the disorder for a minimum of 10 years before they're even diagnosed with it and one of the reasons for that is they tend to self medicate with alcohol and other drugs. And a lot of times, as in Mr. Williams' case, once they're prescribed medications to help control their symptoms, the use of the alcohol and the other drugs goes away because their symptoms are being managed through proper medication." (Tr. 48).

In his written opinion, the ALJ found the claimant had the severe impairment of bipolar disorder, but that it did not meet a listing. (Tr. 12-17). At step four, the ALJ summarized much of the record as to the claimant's mental impairments, but did not

mention the claimant's hearing testimony at all. The ALJ summarized the MHSO records, interpreting them as demonstrating that the claimant's mental impairments were due to his own noncompliance with medications, and noting, "[Claimant's] case was considered to be one of "low" complexity. He apparently was seen on several occasions, and in May 2006 he was described as generally improved, and as demonstrating improvement in self behavior." (Tr. 18). The ALJ then discussed Dr. Turnock's opinion, as well as Dr. Wyatt's opinion. The ALJ noted Dr. Turnock described the claimant as energetic, but found the claimant's alleged anger problems to be inconsistent with having custody of his two-year-old son. (Tr. 19). The ALJ gave no weight to Dr. Wyatt's opinion, describing it as "clearly based for the most part upon claimant's subjective complaints and self-reported symptoms, which the undersigned does not find to be very credible." (Tr. 19). In support of his findings, the ALJ stated that MHSO records did not reflect that Dr .Wyatt saw the claimant frequently, or when he saw the claimant; that Dr. Wyatt's opinion contained no "internal supporting criteria," and lacked "supportive medical documentation." (Tr. 20). The ALJ then credited the opinions of the three state reviewing physicians (who found the claimant not disabled for simple tasks that did not involve contact with the general public), and mentioned MHSO notations from April 20, 2006 and February 2, 2007, which characterized the claimant as "Doing well." (Tr. 20, 400, 404). These notations appear to be from Medication Management Review Notes from April 20, 2006, and February 26, 2007, and apparently were related the claimant's status related to taking his medications. (Tr. 400, 404). The ALJ also noted that the claimant had reported hospitalizations due to his mental impairments, but stated that the

record did not support such claims. Additionally, the ALJ noted that although the claimant stated he "could not stand to be around others," he reportedly participated appropriately in group therapy. (Tr. 21).

As to the claimant's physical impairments, at step two, the ALJ specifically addressed and evaluated Dr. Butt's opinion, found it not credible, and found that the claimant's myocardial bridging, social anxiety, hepatitis C, osteoporosis, and back problems were not severe impairments. (Tr. 12). At step four, the ALJ then explained that he had considered *all* of the claimant's allegations of disabling impairments and pain, then found them not supported by the medical evidence to the extent alleged. The ALJ thus found the claimant not entirely credible and not disabled. (Tr. 21-22).

In essence, the claimant argues that the ALJ improperly assessed the opinion of Dr. Shyla Butt, and erred when he found that Dr. Butt exaggerated her assessment of the claimant. In fact, the ALJ took great pains to properly assess Dr. Butt's opinion both at step two and step four. Nevertheless, the ALJ *does* appear to have improperly evaluated the claimant's mental impairments, and the undersigned Magistrate Judge finds that the ALJ erred at step four in weighing that evidence.

The ALJ correctly characterized the evidence from MHSO, including Dr. Wyatt's opinion, to be "other source" evidence. But even if the opinions are not medically accepted sources, Social Security regulations do provide for the proper consideration of "other source" opinions such as the ones found in this record. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and

functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1; Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator *must consider* and what the adjudicator *must explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [emphasis added]. The relevant factors for evaluating opinion evidence from "other sources" are: 1) the length of the relationship and frequency of contact, 2) whether the opinion is consistent with other evidence, 3) the extent the source provides relevant supporting evidence, 4) how well the source's opinion is explained, 5) whether the claimant's impairment is related to a source's specialty or area of expertise, and 6) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ did address some of those factors, but only cited the evidence that supported his conclusions. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [citations omitted]; *Clifton,* 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to

rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted]. Notably, "'depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source.'" *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5.

Second, the ALJ failed to mention any of the claimant's GAF scores contained in the record. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job," *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have discussed GAF scores in the record and determined whether they were due to occupational factors. *See Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence."); *Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low

GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted].

Third, the claimant testified at the administrative hearing that he had been hospitalized for suicide attempts. Instead of requesting those records, the ALJ found the claimant not credible because those records had not been submitted. But it is the ALJ who "has a basic duty of inquiry to fully and fairly develop the record as to material issues." *Baca v. Department of Health & Human Services*, 5 F.3d 476, 479-80 (10th Cir. 1993) [citations omitted]. This duty involves "obtaining pertinent, available medical records which come to [the ALJ's] attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) [citations omitted].

Last, the ALJ also erred when he listed a number of symptoms that he expected to see manifested by the claimant's impairments—"loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, prolonged bed rest, or adverse neurological signs"—then concluded that because the record lacked those expected signs, the record failed to demonstrate "a pattern of such severity as to prevent the claimant from engaging in" light work. (Tr. 22). *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) and *Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987). Indeed, the claimant appeared at the hearing with a

cane—an assistive device—but the ALJ ignored this.

Because the ALJ failed to properly consider the "other source" opinions provided by MHSO and Dr. Wyatt, and impermissibly substituted his own medical opinion for that of the claimant's physicians, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma